IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JEFFREY S. LINDNER and MOLOAA FRUIT STAND, LLC, | ) CIVIL NO. 23-00461 JMS-WRP ) |
| | ) |
| Plaintiffs, | ) FINDINGS AND ) RECOMMENDATION TO GRANT |
| | ) IN PART AND DENY IN PART |
| vs. | ) PLAINTIFFS' MOTION FOR ) DEFAULT JUDGMENT AGAINST |
| JASMINE FARAH, | ) DEFENDANT JASMINE FARAH |
| | ) |
| Defendant. | ) |
| | ) |

FINDINGS AND RECOMMENDATION TO GRANT IN PART
AND DENY IN PART PLAINTIFFS' MOTION FOR DEFAULT
<u>JUDGMENT AGAINST DEFENDANT JASMINE FARAH</u>

Before the Court is Plaintiffs' Motion for Default Judgment against

Defendant Jasmine Farah, filed on May 22, 2024 (Motion), ECF No. 17.  The

Court found the Motion suitable for disposition without a hearing pursuant to Rule

7.1(c) of the Local Rules of Practice of the United States District Court for the

District of Hawaii.  <u>See</u> Minute Order, dated 5/24/2024, ECF No. 18.  The Court

FINDS AND RECOMMENDS that Plaintiffs' Motion be GRANTED IN PART

AND DENIED IN PART as detailed below.[1]

---

[1] Within fourteen days after a party is served with the Findings and
Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written
objections in the United States District Court.  A party must file any objections
within the fourteen-day period to preserve appellate review of the Findings and
Recommendation.

BACKGROUND

Plaintiff Jeffrey Lindner, a Hawaii resident, is the sole member of Plaintiff Moloaa Fruit Stand, LLC (Moloaa Fruit Stand), a Hawaii limited liability company.  See Compl., ECF No. 1, ¶¶ 1, 2.  Plaintiffs allege that Defendant is a resident of California and a former employee of Plaintiff Moloaa Fruit Stand.  See id. ¶ 3.

Plaintiffs allege that in August 2023 and September 2023 Defendant posted several false and disparaging statements on the social media platform TikTok referencing Plaintiffs and directed to individuals in Hawaii.  See id. ¶¶ 7-16, 19-20.  As alleged in the Complaint, the five disparaging posts make false statements that Plaintiff Lindner, identified by Defendant as her "old boss at the smoothy bar at Moloaa Kauai," was an abuser and was involved in human trafficking, sex trafficking, and child sex trafficking.  See id. ¶¶ 10, 12, 14, 16, 19-20.  Plaintiffs also allege that in one of the posts, Defendant showed a photo of Plaintiff Lindner, identified him as the owner of Plaintiff Moloaa Fruit Stand, and falsely claimed that Plaintiff Lindner was part of a child sex trafficking ring.  See id. ¶ 14.  Plaintiffs allege that Defendant continued to make these statements even after Plaintiffs' counsel sent her a cease-and-desist letter.  See id. ¶¶ 18-20.  As a result of these false and disparaging statements, Plaintiff Lindner has been injured

2

both personally and professionally and Plaintiff Moloaa Fruit Stand has been damaged in the form of lost revenue and property damage.  See id. ¶¶ 11, 13, 15, 17, 21-22.

Plaintiffs filed their Complaint against Defendant on November 14, 2023, asserting a claim for defamation (libel and libel per se).  See Compl., ECF No. 1.  Defendant was personally served with the Summons and Complaint on January 3, 2024.  See Proof of Service, ECF No. 9, at 2; see also Pls.' Suppl. Decl. in Support of Request for Default, ECF No. 13.  The Clerk entered default against Defendant pursuant to Rule 55(a) of the Federal Rules of Civil Procedure on February 20, 2024.  See Clerk's Entry of Default, ECF No. 15.  The present Motion followed seeking default judgment against Defendant.

## DISCUSSION

Default judgment may be entered if the defendant has defaulted by failing to appear and the plaintiff's claim is for a "sum certain or for a sum which can by computation be made certain[.]"  Fed. R. Civ. P. 55(b)(1), (2).  The granting or denial of a motion for default judgment is within the discretion of the court.  See Haw. Carpenters' Trust Funds v. Stone, 794 F.2d 508, 511-12 (9th Cir. 1986).  Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible.  See Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986).

3

**A. Jurisdiction**

Before considering the merits of default judgment, the Court has an affirmative obligation to determine whether it has subject matter jurisdiction over this action and personal jurisdiction over Defendant.  See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").

**1. Subject Matter Jurisdiction**

Plaintiffs' Complaint alleges that the Court has diversity subject matter jurisdiction.  See Compl., ECF No. 1, ¶ 4.  Plaintiffs are residents of Hawaii.  See id. ¶¶ 1, 2.  Although the Complaint alleges that Defendant is a resident of California, Defendant was personally served in Florida.  See Pls.' Suppl. Decl. in Support of Request for Default, ECF No. 13, at 3.  Although the record regarding Defendant's current place of residence is not entirely clear, there is no indication in the record that Defendant currently resides in Hawaii, which would prevent the Court from exercising diversity subject matter jurisdiction.  For purposes of default, the Court accepts Plaintiffs' jurisdictional allegations as true. See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (stating that on default "the factual allegations of the complaint, except those

4

relating to the amount of damages, will be taken as true." (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)).  Because Plaintiffs are residents of Hawaii and Defendant is a resident of California and the alleged amount in controversy exceeds $75,000.00, this Court has diversity jurisdiction over this matter.  See 28 U.S.C. § 1332(a)(2); see also Maine Cmty. Health Options v. Albertsons Companies, Inc., 993 F.3d 720, 723 (9th Cir. 2021) ("In a diversity case originally filed in federal court, the sum claimed in the complaint controls if the claim is apparently made in good faith.  It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

### 2. Personal Jurisdiction

Personal jurisdiction is proper if it is consistent with Hawaii's long arm statute, and it comports with due process of law.  See Boschetto v. Hansing, 539 F.3d 1011, 1021-22 (9th Cir. 2008).  Because Hawaii's long arm statute reaches to the full extent permitted by the United States Constitution, the Court need only determine whether due process permits the exercise of personal jurisdiction.  See Television Events & Mktg., Inc. v. Amcon Distrib. Co., 416 F. Supp. 2d 948, 958 (D. Haw. 2006) (citing Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800–01 (9th Cir. 2004)); Haw. Rev. Stat. § 634-35.

For due process to be satisfied, a defendant must have "minimum contacts" with the forum state such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (citing Int'l Shoe Co. v. Wash., 326 U.S. 310, 315 (1945)). Here, the Court must determine whether it has specific jurisdiction over Defendant. Specific jurisdiction exists if (a) the defendant has purposefully directed its action or consummated some transaction within the forum or otherwise purposefully availed itself of the privileges of conducting activities in the forum; (b) the claim arises out of or results from the defendant's forum related activities; and (c) the exercise of jurisdiction is reasonable. See Boschetto, 539 F.3d at 1021.

### a. Purposeful Direction

First, to show purposeful direction, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (internal quotation marks omitted). Here, Defendant intentionally posted five videos on social media specifically accusing Plaintiff Lindner, a Hawaii resident and Hawaii business owner, of engaging in

6

abusive and criminal conduct in Hawaii.  See Compl., ECF No. 1, ¶¶ 7-20.  Given

that the accusations involved conduct by Plaintiff Lindner in Hawaii, and that

Plaintiff Lindner resides in Hawaii and operates Plaintiff Moloaa Fruit Stand in

Hawaii, Defendant knew that any resultant harm would likely also take place in

Hawaii.  Accordingly, the Court concludes that Defendant's contacts with Hawaii

are sufficient to show purposeful direction.  See Scofield v. Guillard, No. 3:22-CV-

00521-REP, 2023 WL 7496739, at *7–8 (D. Idaho Nov. 13, 2023) (finding

personal jurisdiction over a Texas resident who posted allegedly defamatory

TikTok videos regarding an Idaho resident's actions in Idaho).

### b. Claims Arise Out of Forum-Related Activities

Second, for specific personal jurisdiction, the claim asserted in the

litigation must arise out of the defendant's forum-related activities.  See Menken v.

Emm, 503 F.3d 1050, 1058 (9th Cir. 2007).  Plaintiffs must show that they would

not have been injured "but for" Defendant's conduct directed toward the forum.

Id.  Here, as noted above, Defendant's contacts with Hawaii are posting

defamatory videos regarding Plaintiffs in Hawaii.  If not for Defendant's conduct,

Plaintiffs would not have been injured.  Accordingly, the Court concludes that the

second requirement for specific personal jurisdiction is met.

7

### c. Reasonableness of Exercise of Jurisdiction

Finally, to satisfy due process, the exercise of personal jurisdiction must be reasonable.  See Menken, 503 F.3d at 1057 (citations omitted).  To determine reasonableness, the Court must balance seven factors:  "(i) the extent of the defendant's purposeful interjection into the forum state's affairs; (ii) the burden on the defendant of defending in the forum; (iii) the extent of conflict with the sovereignty of the defendant's state; (iv) the forum state's interest in adjudicating the dispute; (v) the most efficient judicial resolution of the controversy; (vi) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (vii) the existence of an alternative forum." Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp., 905 F.3d 597, 607 (9th Cir. 2018) (citation omitted).

Here, the Court finds that these factors weigh in favor of finding that the exercise of jurisdiction over Defendant comports with the notions of fair play and substantial justice.  First, the degree of Defendant's interjection weighs in favor of finding jurisdiction.  Defendant's acts were aimed at Plaintiffs in Hawaii. She posted defamatory statements about Plaintiff Lindner and Plaintiff Lindner's business, Plaintiff Moloaa Fruit Stand, in Hawaii knowing that this would likely injure Plaintiffs in Hawaii.  Second, the burden on Defendant, a resident of California, to litigate in Hawaii is significant; however, the inconvenience is not so

8

great as to deprive her of due process, particularly given Defendant's purposeful direction of her actions to Hawaii.  See Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128-29 (9th Cir. 1995) ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." (internal quotation marks and citation omitted)).  Third, there is no indication that the court's exercise of jurisdiction in Hawaii would conflict with the sovereignty of California.  Fourth, Hawaii has a "strong interest in providing an effective means of redress for its residents who are tortiously injured."  Resnick v. Rowe, 283 F. Supp. 2d 1128, 1141 (D. Haw. 2003) (quoting Miracle v. N.Y.P. Holdings, Inc., 87 F. Supp. 2d 1060, 1070 (D. Haw. 2000)).  Because Plaintiffs are Hawaii residents, this factor weighs in favor of finding jurisdiction.  Fifth, considering of the most efficient judicial resolution, witnesses and evidence are located in both Hawaii and California.  This factor is neutral.  Sixth, although it would be more costly and inconvenient for Plaintiffs to litigate in another forum, this factor is given little weight.  See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1324 (9th Cir. 1998).  Seventh, Plaintiffs have not demonstrated the unavailability of an alternative forum.  See id.  However, because Defendant has not come forward to

9

request an alternative forum, this factor is neutral. Balancing these seven factors,

the Court concludes that the exercise of specific personal jurisdiction over

Defendant is reasonable.

In conclusion, the Court finds that the requirements for the exercise of

specific personal jurisdiction are satisfied. Because the Court has found that

subject matter and personal jurisdiction are appropriate, the Court turns to default.

### B. Default Judgment Factors

Following a determination that jurisdiction is proper, the Court must

consider whether default judgment is appropriate. The court should consider the

following factors in deciding whether to grant a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff;
> (2) the merits of plaintiff's substantive claim;
> (3) the sufficiency of the complaint;
> (4) the sum of money at stake in the action;
> (5) the possibility of a dispute concerning material facts;
> (6) whether the default was due to excusable neglect; and
> (7) the strong policy underlying the Federal Rules of Civil
>     Procedure favoring decisions on the merits.

Id. at 1471-72 (the Eitel factors).

On default "the factual allegations of the complaint, except those

relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc.,

826 F.2d at 917-18. The allegations as to liability are deemed true, but the plaintiff

must establish the relief to which it is entitled. See Fair Hous. of Marin v. Combs,

10

285 F.3d 899, 906 (9th Cir. 2002).  Also, "necessary facts not contained in the

pleadings, and claims which are legally insufficient, are not established by

default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992)

(citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).

## 1. The Possibility of Prejudice to Plaintiffs

The first factor considers whether Plaintiffs would suffer prejudice if

default judgment is not entered.  See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp.

2d 1172, 1177 (C.D. Cal. 2002).  Here, absent entry of default judgment, Plaintiffs

would be without another recourse for recovery.  Accordingly, the first Eitel factor

favors default judgment.

## 2. Merits of Plaintiffs' Substantive Claims

For purposes of liability, the factual allegations in the complaint are

taken as true on default.  See TeleVideo Sys., Inc., 826 F.2d at 917-18; Fair Hous.

of Marin, 285 F.3d at 906.  Here, the allegations in Plaintiffs' Complaint, taken as

true, establish that Plaintiffs are entitled to default judgment against Defendant.

Plaintiffs seek default judgment against Defendant for their claim of

defamation.  See Mot., ECF No. 17.  To state a claim for defamation under Hawaii

law, Plaintiffs must allege: "(1) a false and defamatory statement concerning

another; (2) an unprivileged publication to a third party; (3) fault amounting at

least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."  Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd., 58 P.3d 1196, 1218 (Haw. 2002).

First, Plaintiffs assert that the following statements made by Defendant about Plaintiffs are false:  that Plaintiff Lindner is part of human trafficking and sex trafficking ring in Hawaii, that Plaintiff Lindner was trying to lure girls who worked at Plaintiff Moloaa Fruit Stand, that Plaintiff Lindner was abusing a "slave" in the sex trafficking ring, that Plaintiff Lindner was threatening the life and safety of Defendant's friend, that Plaintiff Lindner was part of a child sex trafficking ring, that Plaintiff Lindner sold women from his home, that Plaintiff Lindner was a manipulator and sexual abuser.  See Compl., ECF No. 1, ¶¶ 9-21. Second, Plaintiffs allege that Defendant knowingly published these false statements on a social media platform.  See id. ¶ 24.  Third, Plaintiffs allege that Defendant made these statements intentionally.  See id. ¶ 27.  Fourth, Plaintiffs assert, in the alternative, that Defendant's statements are defamation per se, and that Plaintiffs have suffered special damages.  See id. ¶¶ 26, 29.

The Court finds that Plaintiffs have sufficiently pled defamation per se.  Under Hawaii law, defamatory statements that "impute to a person the

12

commission of a crime" and statements that "have a tendency to injure [Plaintiff] in his office, profession, calling or trade" or "which hold [Plaintiff] up to scorn and ridicule and to feelings of contempt or execration" are considered defamation per se. Partington v. Bugliosi, 825 F. Supp. 906, 915 (D. Haw. 1993) (citing Butler v. United States, 365 F. Supp. 1035, 1044 (D. Haw. 1973)). The Court finds that Plaintiffs have sufficiently alleged defamation per se because the statements made by Defendant impute Plaintiff Lindner with the commission of crimes including sexual assault, human trafficking, and child sex trafficking. See Compl., ECF No. 1, ¶¶ 10-21. Additionally, Defendant's statements concern Plaintiff Lindner's ability to conduct his business at Moloaa Fruit Stand, including that Plaintiff Lindner tried to lure employees into a sex trafficking ring. See id. ¶ 10. These statements impugn Plaintiff Lindner's business reputation as well as injure Plaintiff Moloaa Fruit Stand's business reputation.

Even if the Court did not find that Plaintiffs' allegations are sufficient to establish that they are entitled to judgment against Defendant for defamation per se, the Court finds that Plaintiffs sufficiently pled special damages in the form of lost profits and property damage. See id. ¶ 29.

This factor weighs in favor of default judgment because the allegations in the Complaint, taken as true, are sufficient to establish Plaintiffs'

claim for defamation.

### 3. Sufficiency of the Complaint

The allegations in the Complaint are sufficiently pled and supported by the documents filed with the Complaint and the Motion. The Court finds that the sufficiency of the Complaint weighs in favor of default judgment.

### 4. Sum of Money at Stake

The Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1177 (citing Eitel, 782 F.2d at 1472).

Plaintiffs seek damages against Defendant in the amount of $70,029.92[1] in special damages, $50,000 in general damages, and $200,000 in punitive damages. See Mot., ECF No. 17 at 13-20. Although, as discussed below, the Court finds that Plaintiffs have not carried their burden regarding the specific amount of damages sought in their Motion, Plaintiffs' damages request is tailored to Defendant's specific wrongful conduct. The Court finds that this factor weighs in favor default judgment.

---

[1] The Court notes that on one page of Plaintiffs' Motion they state that they are seeking $146,312 in special damages. See Mot., ECF No. 17, at 13. However, the discussion of the specific requested damages and the Declaration of Plaintiff Lindner in support of the requested damages reference the amount of $70,029.92 in special damages. See id. at 5, 15, and 20.

**5. Possibility of Dispute Concerning Material Facts**

The well-pled factual allegations of the Complaint, except those

relating to the amount of damages, will be taken as true.  TeleVideo Sys., Inc., 826

F.2d at 917-18.  Defendant has been given a fair opportunity to defend this action

and has not done so.  Because no dispute has been raised regarding Plaintiffs'

material factual allegations, this factor favors default judgment.

**6. Whether Default was Due to Excusable Neglect**

The Court finds that Defendant's default was not the result of

excusable neglect.  Defendant's default was not the result of any excusable neglect,

but rather due to her conscious and willful decision not to defend this action.

Defendant failed to defend this action and default was entered against her.  See

Entry of Default, ECF No. 15.  This factor too favors default judgment.

**7. Policy Favoring Decisions on the Merits**

Defendant's default renders a decision on the merits impractical, if not

impossible.  Under Rule 55, "termination of a case before hearing the merits is

allowed whenever a defendant fails to defend an action."  PepsiCo., Inc., 238 F.

Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219

F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere existence of Fed. R. Civ. P. 55(b)

indicates that the seventh Eitel factor is not alone dispositive").  Here, Defendant

has failed to defend this action and has consequently rendered adjudication on the merits before this Court impracticable.  This factor does not preclude the Court from entering default judgment against Defendant.

### 8. Totality of <u>Eitel</u> Factors

The Court finds that the totality of the <u>Eitel</u> factors weighs in favor of entering default judgment in Plaintiffs' favor and against Defendant.

### C. Remedies

Although Defendant's default establishes liability, it does not establish all relief to which Plaintiffs are entitled.  <u>See</u> <u>Fair Hous. of Marin</u>, 285 F.3d at 906.  Plaintiffs must provide evidence to support their requested relief and that relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  "In determining damages, the court can rely on the declarations submitted by the plaintiff."  <u>Philip Morris</u>, 219 F.R.D. at 498.  As noted above, Plaintiffs request that the Court award special damages, general damages, punitive damages, plus an award of prejudgment and post judgment interest.  <u>See</u> Mot., ECF No. 17, at 13-20.  Each category of requested relief is addressed below.

### 1.  Special Damages

First, regarding special damages, Plaintiffs assert that they have

suffered lost profits and property damage.  See id. at 13.  Based on the profit and

loss statement for Plaintiff Moloaa Fruit Stand, its monthly average net profits in

the eight months following the publication of Defendant's defamatory statements

decreased by $3,671.58, as compared to the thirteen months before.  See Decl. of

Pl. Lindner, ECF No. 17-1, ¶¶ 7-10 and Ex. B.  Accordingly, Plaintiffs ask the

Court to award special damages in the amount of $66,529.92, which is total

amount of lost profits from September 2023 through April 2024 ($44,353.34)[2] plus

anticipated future lost profits from May 2024 through August 2024 ($22,176.64). [3]

See Decl. of Pl. Lindner, ECF No. 17-1, ¶ 11; Mot., ECF No. 17, at 14-15.  The

Court finds that Plaintiffs have carried their burden in proving these special

damages.

---

[2] Calculated by adding the actual net loss that Plaintiff Moloaa Fruit
Stand generated in the eight months after Defendant's defamatory statements (loss
of $36,863.02) plus projected lost profits based on the average monthly net profits
from the year before Defendant posted her defamatory statements (loss of $936.29
in profits per month x 8 months = -$7,490.32), for a total of $44,353.34 in past lost
profits.

[3] Calculated by adding the average monthly net loss that Plaintiff
Moloaa Fruit Stand generated in the eight months after Defendant's defamatory
statements (actual net loss of $36,863.02 ÷ 8 months = $4,607.87), multiplied by
four to account for losses through August 2024 ($4,607.87 x 4 = -$18,431.48), plus
projected lost profits based on the average monthly net profits from the year before
Defendant posted her defamatory statements (loss of $936.29 per month in profits
x 4 months = -$3,745.16), for a total of $22,176.64 in anticipated future lost
profits.

Additionally, Plaintiffs seek $3,500 "to repair or replace" vandalized property. See Mot., ECF No. 17, at 15. In support of this request, Plaintiff Lindner states Plaintiff Moloaa Fruit Stand's property was vandalized in September 2023 and that his "best estimate to repair the vandalism or have it replaced in $3,500." See Pl. Lindner's Decl., ECF No. 17-1, ¶ 15 (stating property was "vandalized with terms like 'predator,' 'pedo,' and 'abuser'"). Although Plaintiff Lindner's Declaration states that the property was "e.g. a large dumpster," Plaintiffs do not state whether it was only the dumpster that was vandalized or whether other property was also vandalized. See id. Further, Plaintiffs do not state what would be required to repair the property versus replace the property and provide only Plaintiff Lindner's "best estimate" of $3,500 for either alternative. The Court finds that Plaintiffs have not carried their burden in proving these requested special damages.

## 2. General Damages

Second, Plaintiffs request an award of general damages of $50,000 based on Plaintiff's Lindner's mental anguish and reputational harm caused by Defendant's defamatory posts that accused him of criminal acts including human trafficking involving adults and children. See Mot., ECF No. 17, at 15-16. Plaintiff Lindner's declaration details that he received harassing text massages and

18

calls about what Defendant posted on social media, that his reputation was harmed because he was forced to respond to hurtful questions from business colleagues, friends, and family, and that he was distraught, angry, and emotionally overwhelmed.  See Pl. Lindner's Decl., ECF No. 17-1, ¶¶ 3, 4, 6.

In support of the requested amount of general damages, Plaintiffs cite to a 1995 case from Louisiana state court where the court reduced the amount of general damages awarded by a jury from $80,000 to $50,000 in a case involving defamatory statements that the plaintiff was a rapist.  See Mot., ECF No. 17, at 16. Plaintiffs attempt to distinguish a 2018 case from this court where the court awarded $10,000 in general damages on default involving defamatory statements arguing that the statements in that case were merely that the plaintiff was a thief "among other statements."  See id.  The Court is not persuaded by Plaintiffs' attempt to distinguish that case.  Notably, the "other statements" alluded to in Plaintiffs' Motion were that the plaintiff in that case was a sexual deviant, had criminal convictions for sex crimes, was a sexual predator, and had drugged his employees before sexually assaulting them.  See Isaac v. Daniels, No. CV 16-00507 DKW-RLP, 2018 WL 1903606, at *5 (D. Haw. Mar. 30, 2018), *adopted by* 2018 WL 1902543 (D. Haw. Apr. 20, 2018).  Contrary to Plaintiffs' assertions, given the similarity of the defamatory statements at issue, the Court finds this case

19

persuasive as to the appropriate award of general damages.  See also Olive v.
Robinson, No. 2:18-CV-00862-BAT, 2019 WL 4748390, at *3 (W.D. Wash. Sept.
30, 2019) (awarding $10,000 in general damages on default involving statements
that the plaintiff was a pervert, a sexual predator, and a manipulator).  However,
the Court finds that the nature of the defamatory statements at issue in this case are
more egregious because they involve criminal acts against children.  Given the
nature of Defendant's statements, the fact that Defendant made five postings over a
short period of time, the evidence presented by Plaintiffs, and the awards by other
courts in similar cases, the Court finds that an award of $20,000 in general
damages is appropriate.

### 3.  Punitive Damages

Third, regarding Plaintiff's request for punitive damages, under
Hawaii law, punitive damages are "assessed in addition to compensatory damages
for the purpose of punishing the defendant for aggravated or outrageous
misconduct and to deter the defendant and others from similar conduct in the
future."  Masaki v. Gen. Motors Corp., 780 P.2d 566, 570 (Haw. 1989).  To
warrant punitive damages, Plaintiffs "must prove by clear and convincing evidence
that the defendant has acted wantonly or oppressively or with such malice as
implies a spirit of mischief or criminal indifference to civil obligations, or where

20

there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences." Ass'n of Apt. Owners v. Venture 15, Inc., 167 P.3d 225, 290 (Haw. 2007) (quoting Masaki, 780 P.2d at 570). "[T]o justify an award of punitive damages, a positive element of conscious wrongdoing is always required[.] Something more than the mere commission of a tort is always required for punitive damages." Valvanis v. Milgroom, No. CIV.06-00144JMS-KSC, 2009 WL 1561575, at *16 (D. Haw. June 1, 2009). The defendant's mental state is a primary focus of the inquiry in determining whether punitive damages are appropriate. See Masaki, 780 P.2d at 570.

Here, Plaintiffs have not proven by clear and convincing evidence that Defendant has acted "wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations." See id. To determine whether the award of punitive damages is appropriate, the Court primarily focuses on the defendant's mental state. Plaintiffs argue that punitive damages are warranted because Defendant continued to post defamatory statements even after receiving a cease-and-desist letter from Plaintiffs' counsel. See Mot., ECF No. 17, at 18. The Court is not persuaded that this is sufficient "clear and convincing evidence" to "raise the presumption of a conscious

21

indifference to consequences." <u>Masaki</u>, 780 P.2d at 570.  Although Defendant

made one social media post after receiving the cease-and-desist letter from

Plaintiffs' counsel, it appears that Defendant did not mention Plaintiff Lindner by

name, referring to him as "Mr. You-Know-Who from Kauaʻi that I've been talking

about" and it appears that Defendant did not repeat her prior defamatory

statements, but rather merely stated that Plaintiffs were "guilty."  <u>See</u> Compl., ECF

No. 1, ¶ 20 (alleging that Defendant made statements referencing "Mr. You-Know-

Who from Kauaʻi that I've been talking about" and "Fruit Stand Tr@fficking

Kauai," followed by a statement that Defendant received a letter "proving that they

are guilty," and that "there's too much evidence to prove that it's true and they're

guilty").  Further, there is no evidence that Defendant made any additional social

media posts containing false statements after September 19, 2023, and no evidence

that the posts at issue remain publicly available.  Further, Plaintiffs have not

provided any authority that similar punitive damages have been awarded on default

judgment in similar cases.  <u>See</u> Mot., ECF No. 17, at 18-19.  The only case cited by

Plaintiffs is from Maryland.  <u>See</u> <u>id.</u> (citing <u>Harvey-Jones v. Coronel</u>, 239 Md.

App. 145, 158-60 (2018) (affirming a $200,000 punitive damages verdict

following a hearing on damages after entry of default, because the defendant's

failure to object to the plaintiff's requests for admissions permitted the court to

22

infer that the defendant's net worth was over $1 million, and because there was

evidence that during litigation, the defendant transferred a property worth

$200,000).  Further, Plaintiffs have not provided any information regarding

Defendant's financial condition.  See Isaac, 2018 WL 1903606, at *8 (citing

Alutiiq Int'l Sols., LLC v. OIC Marianas Ins. Corp., 149 F. Supp. 3d 1208, 1215

(D. Nev. 2016) ("When punitive damages are sought by default judgment, the

court must have independent evidence to support the award because punitive-

damages-worthy conduct alleged in a complaint is not regarded as admitted by

default.").  Based on the circumstances of this case and the evidence presented by

Plaintiffs, the Court finds that Plaintiffs have failed to demonstrate that punitive

damages are appropriate in this action.

### 4.  Interest

Finally, Plaintiffs request an award of prejudgment and post judgment

interest.  See Mot., ECF No. 17, at 19.  Based on the facts of this case and the

relevant statutory authority, the Court finds that Plaintiffs are entitled to

prejudgment beginning on August 20, 2023, through the date of entry of judgment

and are entitled to post judgment interest from the date of entry of judgment.  See

Haw. Rev. Stat. § 636-16; 28 U.S.C. § 1961.

In total, the Court recommends that the district court award

$66,529.92 in special damages and $20,000 in general damages, plus prejudgment

and post judgment interest.

CONCLUSION

The Court FINDS and RECOMMENDS that Plaintiffs' Motion for

Default Judgment against Defendant be GRANTED IN PART AND DENIED IN

PART as follows:

(1) The district court GRANT Plaintiffs' request for default judgment

against Defendant Jasmine Farah; (2) The district court AWARD Plaintiffs

damages in the amount of $66,529.92 in special damages, $20,000 in general

damages, plus prejudgment and post judgment interest against Defendant Jasmine

Farah; (3) The district court DENY Plaintiffs' request for punitive damages.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, AUGUST 5, 2024.



Wes Reber Porter
United States Magistrate Judge

**LINDNER, ET AL. v. FARAH; CIVIL NO. 23-00461 JMS-WRP; FINDINGS
AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART
PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANT JASMINE FARAH**

24